Thank you, Your Honors. May it please the Court, my name is Andrew Schlafly. I'm here representing Dr. Roland Chalifoux, who is in the courtroom today with us. He's the plaintiff appellant and he's a neurosurgeon and interventional pain surgeon who operates on patients who are in pain, such as inserting a morphine pump into their back. And his operations are somewhat unique compared to other types of surgeries in that the patient is awake during the procedure. So that takes a little getting used to. The medical aspects of this case are not really relevant to this appeal. I just give that to you by way of background. He practices in good standing with his medical board. He was in good standing with the West Virginia osteopathic board at all relevant times during the facts of this case. That's just by way of background. Defendants have a bit of a monopoly in West Virginia over this type of procedure and they took actions to exclude Chalifoux from the market because he was an independent physician in that market. So hospitals, as the allegations in the amended complaint set forth, hospitals make more money when their employees are doing these surgeries. And Chalifoux was independent, so the monopoly that defendants have in West Virginia took action to exclude him. And as part of that, they did a peer review, which was really a sham peer review, and they reported it to the National Practitioner Data Bank. Counsel, so I'm sure I understand where you're going here. My concept of this case was basically related to whether or not the settlement agreement was valid and whether your client's counsel had the authority to act for that. That is the issue here. Yes, Judge Agee, and also the issue of whether a settlement can include removing an entry in the data bank. So the judge below, in approving the settlement, there wasn't a settlement, in approving the terms the defendants wanted. He said, I cannot give Dr. Chalifoux the relief he wants of being removed from the data bank because it would be illegal for me to do so. So you're exactly right, Judge Agee, the primary issue on this appeal is whether plaintiffs settled, agreed to the settlement and the procedure by which that occurred. But the data bank issue backs into it because the district court judge was mistaken in his belief that he could not approve a settlement that included removal from the data bank, and therefore the district court judge concluded that that cannot be a term of settlement that plaintiffs would want or could insist upon because it would be illegal. I thought the district court held that, based on the facts as it understood them, that all of the non-economic issues had been settled, and if that were the case, whether or not he made an error as to whether the report could be voided really wouldn't make any difference. That was part of the reasoning, Your Honor, but there was no evidentiary hearing below. And so plaintiff contests that the non-economic terms were settled, and really non-economic did not encompass the data bank issue. When the term non-economic was used below, they're talking about enforcement of the settlement, jurisdiction, terms of payment, releases, but the data bank was such a big issue and always has been throughout this case. The court said that the only thing left was the amount of cash that was going to get paid. Are you saying that there's no evidence in the record to support that? That's right, Your Honor. There's no evidence in the record to support that.  Which is a very high burden to say there's nothing in the record. Well, Your Honor, there just is nothing in the record. The judge did not hold an evidentiary hearing. So I assume counsel for defendants, appellees, will stand up here and say, yeah, all non-economic terms were settled. There's nothing in the record to support that. There was no hearing below. I don't see how it's possible, though, in light of the statute that Congress has passed, the Health Care Improvement Act, for us to sort of open the door and say that you can, that any physician can settle his or her way out of the adverse report. If that's something that can be negotiated away in the course of a settlement proceeding, you've kind of landed a heavy blow to the statute that Congress has passed, which was to have a national data bank that hospitals could refer to so that they wouldn't be awarding staff privileges to someone who's going to do patients substantial harm. And so I did the whole, and I think the defendants, the district court found, and the defendants can say that they made a point of the fact that they didn't have any legal authority to simply pull the report that they were required under the law to make. And they would have gotten, had they tried to do so, I think they would have been in a host of legal, they would have brought on themselves a host of legal problems. Your Honor, that's an excellent point. But what we're talking about here would be a court-approved settlement. We're not talking about a side deal that the court would not have any involvement in. And if a plaintiff can sue for certain relief, and Plaintiff Shalafo did sue for this relief, if you can sue for it, you can settle for it with court approval. The notion that a federal court is without power to— You didn't fare too badly in this settlement. You got $300,000 out of that. It's not bad for not a bad day's work. And as to the anti-disparagement statement, the defendants actually agreed with your language. And then the only remaining issue is the NPDB report, which the defendants, as far as I can tell, had no authority just to sit there and negotiate that away and to rescind it. And, Your Honor, I think you're right on their own. The hospital has no authority. But we're talking about a court-approved settlement. And if someone can sue for something, they can settle for something with court approval. The $300,000, you're right, Judge Wilkinson, is a significant amount of money. And it suggests the hospital agreed this was not entirely proper. I mean, they didn't—well, I can say that in settlement, of course. But they agreed there's something wrong here. Now, if there's something wrong here— The district court, I think, made the point that the Act itself, that you want the report to be rescinded. The Act itself has a process by which you can contest the findings. And I think it was the district court, but it didn't seem to me that this was in dispute, that the process that the Act lays forth for you to contest adverse findings was something that you declined to avail yourself of. Your Honor— So you're using the settlement process to circumvent the process that's set forth in the Act, in a way. Judge Wilkinson, with all due respect, that's not really correct. The process is to sue. There's no process with the databank. The district judge mentioned that Plaintiff Shalafo inserted a rebuttal into the databank, but that doesn't do it. The stigma is still there. The process is to sue, which is what Plaintiff Shalafo did. Now, if the position of this court is going to be that you can't settle your lawsuit, then you'd want to sue. Excuse me. I'm not saying that—you're saying the process is to sue, but there, even assuming that I would agree with you, there you run into another problem, which is the fact that the standard of review here is abuse of discretion and clear error, and it's not as if the district court just whisked his way through it. The district court reviewed the motions carefully, reviewed the correspondence between the parties. He heard from your client on the NPD report. He heard from the parties at a court hearing. He didn't just say, oh, the case is settled. He went through a lot of different steps, and when a district court does that and the standard of review on appeal is one of deference, whether it be abuse of discretion or clear error, and we recognize that district courts have a better view often of the settlement process than we do on appeal. They're simply closer to it, and so, you know, on the one hand, it seems to me you're running into the process— you're circumventing the process the act sets forth, and then you said, oh, the process is to sue, which you did, and the district court made findings. The district court said that the settlement was reached, and we have to review that under a deferential standard, so I think you're running into walls whichever path you wish to take. Your Honor, the standard on reviewing whether the settlement existed, whether it occurred, is not clear error. It's de novo whether a party entered into a settlement. The terms of the settlement would be clear error, but whether he entered into the settlement— agreement, it seems like to me that's—I mean, the district court found that. West Virginia law seems to support it. Tell us why that was error. The error is that under Hensley, Oville, clear presence of this court. The district court has to conduct an evidentiary hearing. All right, well, let's assume he did an evidentiary hearing. What I'm interested in is why do you say that counsel for the appellant did not have the authority to enter into this agreement? He did not have the authority because he had been obstructed many times by Dr. Shalifo that removal of the data bank is essential to this lawsuit. This is a main reason why I'm suing, and they went to mediation. The mediation was unsuccessful. Okay, there was a fair amount of in-camera information the court reviewed, and I'm understanding that none of that related to an instruction from the appellant to counsel. And regardless of what our Fourth Circuit cases may say in the abstract, we're looking to what West Virginia law says about an attorney's apparent authority, and there is a presumption in West Virginia that has to be rebutted by an appellant that the counsel did not have the authority to settle. That's stronger than the common law presumption. It's pretty strong in West Virginia, and I'm not seeing how you've done that. The plaintiff is the captain of the ship. He decides whether there's going to be a settlement. I don't believe under West Virginia or any other jurisdiction, and I don't believe the district judge decided anything in West Virginia that says an attorney can come back. One day it was an e-mail. After mediation was unsuccessful and sent an e-mail a month later, hey, I settled the case. And Dr. Shalifo is like, what? Immediately said to the attorney, no, you didn't. There has to be a removal of the data bank entry. And they go to the judge, district judge, and he's like, well, I can't do that. That's an illegal demand that you're making for settlement. It's not illegal. That's the purpose of the suit. And if there can't be a settlement with that included, then let the lawsuit proceed to judgment. He needs that removed. At this point I'm going to ask my co-panelists if they have any further questions to J.J. We don't have any further questions. I reserve some time for a moment. Thank you. Mr. Giotto. Yes, thank you, Your Honor. Good morning, gentlemen, and may it please the Court. I'm Gene Giotto on behalf of Wetzel Hospital and the other defendants. Attorney Nathan Hammons is in the courtroom with me. Can you put the microphone very close to you? How's that? That's great. Very good. Respectfully, Your Honors, Judge Bailey, in our view, did not commit an error of law, nor did he abuse his discretion in determining that counsel, original counsel for Dr. Shalathote, had apparent and, quite frankly, actual authority to enter into the settlement. As the record reflects and as has been documented in the briefs, original counsel was involved in the case from the inception of the complaint in December of 2022. There was a motion practice that went on in June of 2023. Judge Bailey denied our motion to dismiss. In August of 2023, plaintiff's counsel, original plaintiff's counsel and I, discussed the possibility of exploring settlement. He filed a motion to stay discovery so the parties could engage in early mediation. Judge Bailey stayed the proceeding, and a mediation was held in front of mediator Stephen Delizio in early October of 2023. Now, before that, counsel and I had had interaction about settling. And in March of 23, he expressed Dr. Shalathote's desire that a first starter in settlement negotiations would be to be withdrawing the National Practitioner Data Bank that was filed by the hospital pursuant to our statutory obligation. The communication back, and the record reflects that that was a non-starter, and the communication was, as Judge Agee, I believe, identified, we did not have the right to withdraw something pursuant to the guidelines. The statute indicates that there are three factors by which a health system, a hospital, can withdraw a National Data Bank report. The first is the report was submitted in error. This one was not. The second is the action was not originally reportable because it did not meet the National Practitioner Data Bank reporting requirements. This one complied with those requirements. And the last was the action was overturned on appeal. This one was not. Well, counsel, let me ask you. If the district court found, and there was evidence in the record to support it, that there was a settlement of all disputes between the parties except for the amount of cash, would it make any difference whether or not the NPDB report was to be discussed? I mean, if you settled everything but the cash, what difference does it make? I don't know that it does, Your Honor, quite frankly. If you think about it, we went through the mediation request, we went through the mediation, and there wasn't a word about the National Practitioner Data Bank report, and the judge highlights that in his report. There was not a discussion from counsel at the argument in front of Judge Bailey on our motion to enforce in early December of 2023 by original counsel about the National Data Bank reporting. To the contrary, counsel indicated that that issue was put to rest back in March, early on in the negotiation, before we even submitted the draft settlement agreements of the non-economic terms. As the court indicated during the appellant's argument or discussion, when we got to the mediation in October, all non-economic issues were removed, were done. There was a day-long mediation. There was not a word about the National Practitioner Data Bank report, not one word. We don't resolve the economic issues at the mediation. There continues to be dialogue between counsel and I about the settlement, about the economics. At no time was there a manifestation from Dr. Shalafoet or his prior counsel that it was not reasonable for us to assume that counsel had apparent and actual authority to settle the case. That was the determination made by Judge Bailey at the argument on the motion to enforce in early December. With respect to the Hensley contention that it was not a plenary hearing, we respectfully disagree. It was a robust, thoughtful hearing that was scheduled. The record was transcribed. A thoughtful argument was made by both sides. Much was conceded by plaintiff's counsel, Attorney Kaminsky, at the argument. Dr. Shalafoet was given at least two opportunities to be heard separate and apart from his counsel. Judge Bailey concluded and rightly so that the record was clear that there was a settlement and counsel had the authority to bind his client to the settlement. After that, original counsel withdrew his appearance. New counsel entered their appearance. They filed a motion for rehearing. Judge Bailey considered it and wrote a thoughtful opinion, again indicating that the record evidence in this case established that an effected settlement was established. The record's clear, Your Honor. There was not one word about the National Practitioner Data Bank after March of 2023, and for counsel to suggest that Judge Bailey should somehow add to the settlement that which was not negotiated, was not a condition precedent, is just mistaken. There's a representation in the case that, for some reason, by our filing the motion to enforce that somehow it should negate the settlement. Quite frankly, that's not consistent with the local rule, Rule 26. We have an obligation to file the motion to enforce. The rule in the case law dissuades trying to file something under seal. The Tilley case addresses it clearly. Quite frankly, Your Honor, there's nothing further I think I can add. I think the record's clear in this case. Judge Bailey's decisions are clear. The transcript is clear. At all times throughout the duration of this case, it is clear that there was no manifestation that Dr. Shalafo ever exercised anything that would give the defendants any indication that his counsel did not have actual or apparent authority to settle the case. It was settled. The last thing with respect to this reputational damage on the National Practitioner Data Bank, this isn't the first time there's reports of Dr. Shalafo in the Data Bank. Even if there had been a word about the, you say there was not one word about the National Physician Database report, and I see no reason to disbelieve that. But above and beyond that, if we try to put our imprimatur either directly or indirectly on settlement agreements that rescinded adverse reports to the National Data Bank, I think we would be dealing a serious blow to the whole purposes of the statute, which was to call forth and notify hospitals so that they don't give staff privileges to individuals who have made, in the judgment of their peers and fellow physicians, serious medical mistakes that cost lives. And I understand every time staff privileges are suspended for a physician, there is invariably a claim that this is anti-competitive conduct and that they didn't want, that those who are members of a particular specialty did not want somebody else coming in. That claim is always made. And Congress in this statute, it seems to me, tried to balance those factors, tried to give the physician who is on the adverse end of the findings a path by which to challenge those and at the same time alert hospitals in other areas about individuals' deficiencies. And if we were to put an imprimatur on settlement agreements and let this be bargained away, we'd be upsetting the balance that I think Congress tried to strike between these competing interests. That's the danger. Thank you, Your Honor. I appreciate your point. I agree completely. Just to conclude, unless there's any other questions from the panel, the record is clear. We certainly believe that Judge Bailey's decision is sound based upon the evidentiary record, and he certainly did not abuse his discretion. I'll take any questions should you have any. Thank you. Thank you, Your Honor. Did you have any questions? Your Honor, first to address Judge Wilkinson's point, which is an excellent one, hospitals don't always act properly, and maybe most of the time they do, but in this instance they didn't, and they've offered to pay $300,000 for their wrongdoing. And a judge can look at that, look at the magnitude of that payment, look at the facts, and since we've opened the door here to what were the facts, I just want to point out the allegation was that the patient, while awake during one of these procedures, said stop, and that plaintiff Shalafo did not heed that. Well, he did heed it, but the reason the patient said stop was not because of the injection in his spine, it was because he was having a charley horse. That's where all this stems from. The real motivation was economic, and hospitals do act economically, and they do abuse their power sometimes under this statute. And when they do, it's for a federal judge to look at it, look at the facts, look at the amount of money they're offering to pay, and say the reputation should be cleaned up too. And the hospital wants an anti-disparagement clause by plaintiff Shalafo, yet they want the disparagement of plaintiff Shalafo to continue in the data bank. And the citations by opposing counsel, I think he said it was in the statute, he's citing to a guidebook by the federal agency about voiding a report. That's merely a guidebook. It's not even a regulation. It's an internal guidebook. They put it on the internet. But that's what he wants a federal court to defer to, an agency guidebook. Well, we're long past that now, with the Loper-Bright Enterprises decision by the Supreme Court. Federal courts do not defer to agency guidebooks on issues of law. And a federal court, this is the relief that plaintiff Shalafo seeks. He has that right to seek it in court, and it's been taken away from him by this crazy procedure that surprised all of us. My opposing counsel stood up here and cited a number of claims about whether the data bank was part of the negotiation. None of that's in the record. None of that. He's saying I wasn't told about this after a certain date. It wasn't raised in the negotiation. None of that's in the record. No way to cross-examine them. No way to rebut it except to tell you plaintiff Shalafo insisted on removing that data bank at every step of this procedure, including mediation. And he was at the hearing that the judge had. It was just a motion hearing. He could have been called to the stand. The judge could have asked him questions, which is required under Hensley. Hensley is very clear. If we're talking about the existence of a settlement agreement, not the terms, but whether a settlement was entered into, there has to be a plenary evidentiary hearing. There's no doubt that that's the controlling precedent. That's not the only case either. All Villa V. Grafton Holmes said the same thing. Sir, are you arguing that at the hearing Judge Bailey conducted that it was prohibited to introduce evidence? No, he should have allowed evidence. He did not. Well, what evidence was proffered but not allowed? Plaintiff Shalafo showed up at the hearing. He was there to testify. He tried to talk. The judge rendered his decision before Plaintiff Shalafo could say a word. And Plaintiff Shalafo would have explained. The whole purpose of this lawsuit was to obtain removal of the data bank. Every step of the way, it was a point of negotiation. And if they don't want to settle, if they want to do that, fine. We'll go to trial. We'll have a jury here that the whole case stems from a charley horse that the patient had briefly during surgery. That's what their case rests on. They know what they did was wrong. They've offered to pay $300,000. But the stigma of the data bank continues, and people are misled by that. The data bank doesn't want people dumping in false or misleading allegations into the data bank. It's misleading. The data bank entry doesn't say this all stems from somebody's charley horse during an operation. And so, respectfully, Hensley and many other decisions are crystal clear that a plaintiff is the captain of his ship. An attorney does not settle a case for a plaintiff. Without that, a plaintiff's explicit approval that we're going to do a settlement. And in the mediation, Plaintiff Shalafo was a good sport. He was there the full day until about it was after four, and Plaintiff Shalafo finally said, okay, this isn't the settlement that I'm looking for here. I'm leaving. The mediator filed a report about ten days later. Mediation was unsuccessful. The case should proceed. The district court judge then entered an order. The case is going to proceed. We're going to go to discovery. We're going to do a schedule and everything. And then a month later, Plaintiff Shalafo's attorney sends him an email. I settled the case. I settled the case. That's not due process. That's not the way the procedure works under the clear presence of this court. The data bank, it has its purpose. But for the guidebook to say that you can't void a report unless it's overturned an appeal, of course, that implies settlement, too. That's court approved. That implies court approval. But for someone to then say because the wording in the guidebook prevents a federal judge from approving a settlement that cleans up the data bank of something that's misleading, I mean, that's just legal error. Legal error below. Thank you, sir. Thank you, Your Honor. You okay to go with the next case? You okay to go with the next case? We'll come down and greet counsel and proceed into her final case, and I'll ask you to come up and greet Judge Floyd personally.
judges: J. Harvie Wilkinson III, G. Steven Agee, Henry F. Floyd